IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. **3:07-CR-167-L** |
| | § | |
| **RUBEN B. BOHUCHOT (1)** | § | |
| **FRANKIE LOGYANG WONG (2)** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Joint Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29, filed July 1, 2008. After carefully considering the motion, briefs, record, and applicable law, the court **denies** Defendants' Joint Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29.

**I.     Factual and Procedural Background**

Defendants Ruben B. Bohuchot ("Bohuchot") and Frankie Logyang Wong ("Wong") (collectively, "Defendants") were indicted on May 22, 2007. Both Defendants were indicted on the following counts: count one, conspiracy in violation of 18 U.S.C. § 371; counts two through five, bribery concerning programs receiving federal funds and aiding and abetting in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2; counts six through nine, bribery concerning programs receiving federal funds and aiding and abetting in violation of 18 U.S.C. § 666(a)(2) and 2; count ten, conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h); and count sixteen, a forfeiture allegation brought pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461. Bohuchot was also indicted on the following counts: count thirteen, obstructing and impeding an official proceeding in violation of 18 U.S.C. § 1512(c); and counts fourteen and fifteen, false statement on

a tax return, in violation of 26 U.S.C. § 7206(1). On November 27, 2007, the court dismissed the 1996 Viking Motor Yacht named *Rehab* from the forfeiture allegation.

After two and a half days of jury selection, the trial of this action began on June 18, 2008, and continued until July 9, 2008. On July 10, 2008, the jury returned with its verdict, guilty on all counts as to both Bohuchot and Wong. After the government closed its evidence, Defendants filed their motion for judgment of acquittal of counts one, three through five, seven through ten, and thirteen of the indictment.

## II.     Legal Standard

Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all the evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In determining whether there is sufficient evidence to support a conviction, the court must determine "whether a rational juror could have found the elements of the offense proved beyond a reasonable doubt. In so doing, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in support of the jury verdict." *United States v. Valles*, 484 F.3d 745, 752 (5th Cir.), *cert. denied*, 127 S.Ct. 3025 (2007).

## III.    Defendants' Motion for Judgment of Acquittal

Before the court considers Defendant's arguments pursuant to specific counts, it notes that this is a complex case, and this order points to only a sampling of the evidence in support of Defendants' convictions. The court does not refer to every piece of evidence submitted at trial given that the case involved three weeks of testimony and thousands of documents. The counts for which this motion has been made and the underlying evidence are also inextricably intertwined. The

evidence supporting the conspiracy charge necessary overlaps with the evidence supporting the bribery and money laundering charges. The court notes that Defendants Bohuchot and Wong's close friendship and the number of times they were together does not, of course, prove the government's case. Their frequent association in light of all of the evidence, however, carries substantial weight. Moreover, this case was essentially presented by circumstantial evidence, and in such cases it is a chain of events or circumstances that determine whether particular facts exist. Accordingly, in reviewing the evidence in the light most favorable to the government and allowing the jury to make reasonable inferences and credibility choices, the court concludes that, taken as a whole, the evidence presented by the government was sufficient for a reasonable jury to find beyond a reasonable doubt that Defendants were guilty on all counts raised in their motion for acquittal.

### A. Conspiracy

Defendants move for judgment of acquittal on count one, conspiracy, because they contend that the conspiracy count is merged into the substantive counts of bribery under Wharton's Rule. The government responds that this case falls within the third-party exception to Wharton's Rule and that Wharton's Rule does not apply to bribery of a public official.

Wharton's Rule provides: "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *Iannelli v. United States*, 420 U.S. 770, 773 n.5 (1975) (citation omitted). The "third-party exception . . . renders Wharton's Rule inapplicable when the conspiracy involves the cooperation of a greater number of persons than is required for commission of the substantive offense." *Id*. at 774 (citation omitted).

Defendants cite two cases from the Second Circuit in support of their contention that the conspiracy and bribery counts should merge. *See United States v. Frank*, 520 F.2d 1287, 1290 (2d Cir. 1975), *cert. denied*, 423 U.S. 1057 (1976); *United States v. Sager*, 49 F.2d 725, 727-28 (2d Cir. 1931). The court's decision in *Frank*, however, considered a conspiracy to violate federal securities laws. 520 F.2d at 1289. As the government points out, the court in *Sager* was not considering 18 U.S.C. § 666 but rather older bribery statutes. In *Sager*, the court noted that the bribery count "alleges concert between several intended givers of a bribe and the intended taker of the same bribe. This concert of givers and plurality of agents are necessary elements in the substantive offense of agreeing to receive a bribe and of agreeing to give one." 49 F.2d at 727.

The Fifth Circuit has not specifically addressed whether Wharton's Rule applies to 18 U.S.C. § 666, but other courts have held that it does not. *See United States v. Morris*, 957 F.2d 1391, 1403 (7th Cir.), *cert. denied*, 506 U.S. 941 (1991); *see also United States v. Previte*, 648 F.2d 73, 78 (1st Cir. 1981). These cases hold that the bribery statutes in question do not require concerted criminal activity and that the statute can be committed by a single person; accordingly, Wharton's Rule does not apply. The court finds these cases persuasive and determines that because the substantive bribery offense in this case does not require concerted action, Wharton's Rule does not apply, and Defendants are not entitled to a judgment of acquittal on count one.

**B. Bribery**

Defendants move to dismiss counts three through five and seven through eight because they contend that the government has failed to establish any *quid pro quo* for the alleged bribes at issue. They argue that there is no evidence to show that Bohuchot engaged in a *quid pro quo* arrangement or that Wong requested or received anything of value. They argue that it was the DISD Board of

Trustees, not Bohuchot, that authorized DISD to enter into the E-Rate and Seat Management contracts and that Wong was not in any different position than all other companies bidding on the contracts. The government responds that there is sufficient evidence on the record to support the bribery counts.

Defendant correctly cites the law that conviction on "mere suspicion and innuendo" is not allowed. *United States v. Menesses*, 962 F.2d 420, 427 (5th Cir. 1992). There was more than such innuendo or speculation in this case, however, and the court determines that a rational juror could have concluded that the elements of the bribery counts were proved beyond a reasonable doubt.

The government presented evidence that Bohuchot adjusted the requirements for the RFPs for the E-Rate and Seat Management contracts in ways that benefited Wong and his companies. The evidence established that Bohuchot received numerous gifts and other perks provided from Wong, such as the use of the two yachts and airline tickets on Southwest Airlines. On a drive from the airport to Key West, two witnesses testified about a request for proposal regarding a DISD project that Bohuchot had in his possession. Although the testimony by Coleman and Blair Thomas differed as to some details, their testimony shed light on a key issue in this trial, and the jury was free to weigh the testimony and judge the credibility of these two witnesses on this matter.

Dan Tingley, the yacht captain, testified that Bohuchot controlled and used the two yachts for his personal service and that Wong told him on one occasion when he complained that Bohuchot was operating the yacht unsafely that without Bohuchot, "there would be no boat." He also testified that when Bohuchot wanted to upgrade some equipment on the *Sir Veza II*, Bohuchot told Tingley that Wong was waiting for money from a contract with DISD. Bohuchot later told Tingley that the funds had been received and he directed Tingley to purchase the equipment.

Bohuchot also was upset when Wong was unable to provide tickets to events for him and his family. At another time, Bohuchot asked Blair Thomas something to the effect, "What's in it for me?" at a golf course in Grapevine. Thomas testified that he believed that this statement was made before the Seat Management RFP.

Kim Ngang, who worked for Wong, testified that her salary increased tremendously over a few years and that she paid more than $200,000 of her salary and compensation to Wong. In 2003, Ngang earned just over $20,625. In the three years that followed, she earned almost one million dollars and split a large portion of her compensation with Wong.

In sum, there was also other testimony and numerous documents relevant to the bribery charges from which the jury could have reasonably concluded that the elements of the bribery offenses had been proved beyond a reasonable doubt. Considering the evidence in the light most favorable to the government and making all inferences and credibility choices in favor of the verdict, the court finds that the evidence is sufficient to support the jury's verdict on the bribery counts and therefore determines that Defendants are not entitled to a judgment of acquittal on these counts.

### C. Money Laundering

Defendants seek a judgment of acquittal on count ten, money laundering, because they contend that the government has failed to prove that the funds at issue were the proceeds of illegal activity. They argue that the government failed to provide evidence that links the monetary instruments with any illegal activity and that there is no evidence that the instruments constitute "proceeds" as defined by 18 U.S.C. § 1956. Defendants cite the recent case of *United States v. Santos*, 128 S.Ct. 2020 (2008), and argue that the term "proceeds" does not mean all funds received from illegal activity but rather only the "profits" of the unlawful activity. They argue that in this

case, the government has failed to prove that the charged transactions involve proceeds of unlawful activity, that the charged transactions involve proceeds from the Seat Management or E-Rate contracts, or that the contracts were profitable. They argue that the only payments charged by the government are the bribes Wong is accused of making to Bohuchot and that *Santos* precludes a finding that this violates the money laundering statute.

The government responds that the evidence is sufficient to support the jury's verdict on count ten, and that Larry Lehman testified that MSE, Acclaim, and Consortium companies profited from the DISD contracts. It argues that *Santos* is binding only as to the specific result it reached because it was a 4-4-1 decision and that in this circuit, "proceeds" means gross receipts except in those cases where the predicate specified unlawful activity is a gambling offense under section 1955. Further, it contends that all money and things of value given to Bohuchot were profits because he had no expenses associated with these payments.

In reply, Defendants argue the government misstates the holding of *Santos*. With respect to the evidence at trial, they contend that the court cannot consider the testimony of Lehman because it was part of Defendants' case-in-chief and was presented after they moved for a judgment of acquittal pursuant to Rule 29. They also contend that even if the court could consider this testimony, Lehman testified only that Acclaim was profitable, not that the E-Rate or Seat Management contracts were profitable. They also argue that any alleged profits are unproved and beyond the scope of the conspiracy as indicted.

The government sought leave to file a supplemental response, and the court granted its request. In its surreply, the government argues that even under *Santos*, there is evidence to support the jury's verdict and cites cases decided after *Santos* holding that proceeds from specified unlawful

activity fall within the definition of "profits." Defendants were also granted leave to file a final response, and in this document, they contend that the evidence pointed out by the government does not support the jury's verdict on the money laundering count.[*]

The court first considers the application of *Santos* and determines, as it did with respect to the jury instructions in this case, that the term "proceeds" in the money laundering claim requires a showing of "profits." 128 S.Ct. at 2029; *see also* Court's Charge to the Jury (July 8, 2008) 21. Accordingly, the court must consider whether there was evidence presented in the government's case-in-chief that would support a rational juror's verdict finding that this count was proved beyond a reasonable doubt.

The government argues that the specified unlawful activity in this case is Bohuchot providing valuable insider information and writing contract requirements that enabled Wong to obtain two lucrative contracts with DISD and Wong agreeing to pay Bohuchot and to provide him with valuable benefits.

With respect to the Seat Management contract, the government points out that it put on evidence through the testimony of Blair Thomas, Garret Goerters, and William Coleman that Bohuchot used his position as DISD's Chief Technology Officer to ensure that Hewlett Packard and Wong's company MSE were positioned to win the Seat Management contract. Thomas testified that Bohuchot met with him or Wong before the RFP went public and provided specific information about its requirements that helped HP and MSE formulate their bid. It argues that the testimony

---

[*]The court's order granting leave specified that Defendants must file any response to the government's supplemental brief by **noon** on November 4, 2008. Defendants did not file their response until 3:52 p.m. on November 4, 2008. The court has made amply clear that it is under tremendous time constraints created by the parties. While the court will consider Defendants' arguments, it **admonishes** Defendants for their failure to comply with its deadline.

**Memorandum Opinion and Order – Page 8**

established that Bohuchot manipulated the RFP requirements by requiring that a billion-dollar firm be involved and including a category for "value adds" with a high point value. The government contends that these requirements provided MSE and HP with an advantage in winning the Seat Management contract.

Defendants respond that Goerters testified that there was no nonpublic or insider information provided to him with respect to the Seat Management contract. They contend that Coleman also testified that no insider information was provided. They also point out that HP, not MSE, prepared the response to the RFP and that HP sought to ally with MSE long before any conversations with Bohuchot.

With respect to the E-Rate contracts, the government posits that the evidence shows that the RFP specifications came from the Technology Department through Bohuchot and Alden Gaw, providing Bohuchot with opportunities to manipulate the requirements to benefit Wong and the Consortium. The testimony established that the committee that evaluated bids for the E-Rate contracts was made up of members of the Technology Department, which Bohuchot supervised, and that he negotiated with the Consortium on behalf of DISD. During the course of this contract, Wong employed Cabatingan and funneled large amounts of money to Bohuchot through him, and the government contends that this circumstantial evidence is sufficient for a jury to infer Bohuchot's intent to be influenced and rewarded, and Wong's intent to influence and reward.

Defendants respond that there is no evidence that Bohuchot manipulated the E-Rate contracts and that no witness testified to any impropriety. They also contend that Cabatingan testified that he was hired to do work for Wong's companies, that he delivered services to these companies, and that he was never asked to pay any funds to Bohuchot on behalf of Wong.

As stated above with respect to the bribery counts, the court finds that a rational juror could infer from the testimony presented that Bohuchot intended to be influenced and rewarded and that Wong intended to influence and reward him.

The government next argues that the cash and gifts that Bohuchot received fall within the definition of "proceeds" even after the *Santos* decision. The indictment charged that Bohuchot and Wong conspired to: create and use companies, including Statewide and Kenbridge, to conceal the receipt and disbursement of funds obtained by MSE as a result of DISD contracts; use bogus invoices to create the appearance of legitimacy regarding payments of MSE funds to Statewide and Kenbridge; to cause funds obtained by MSE as a result of DISD contracts to be paid to Statewide and Kenbridge; to use MSE's credit card to pay for entertainment expenses of Bohuchot; to disguise the true nature of payments to Cabatingan by calling them paychecks, by causing payments to be made to Cabatingan from three companies even though he did not perform work for all three companies; to pay Cabatingan with funds from the account of a company by using fraudulent checks purporting to be drawn on the Acclaim account; to disguise the true nature of a payment from Acclaim to Cabatingan by calling the payment a loan; to conceal payments to themselves by diverting the payments through other; to conceal the receipt of funds by causing Cabatingan to pay a bill for Bohuchot; to create bogus and backdated loan documents to mislead federal law enforcement agents and the grand jury about the true nature of payments; and to promote bribery by making ongoing payments that benefited Bohuchot. Indictment (May 22, 2007) 23-24.

The government argues that the transactions involved profits because the acceptance of a bribe by a government official does not involve any expenses. It cites *United States v. Yusuf*, 536 F.3d 178, 190 (3d Cir. 2008), which after *Santos* held in a case involving mail fraud that the

"'proceeds' from the mail fraud in this case also amount to 'profits' of mail fraud." Defendants respond that there is no evidence that any funds paid were paid from an illegally-obtained source and that there is no evidence that MSE or Wong profited.

The court concludes that a rational juror could have concluded that Defendants were guilty of count ten even under the standard set forth in *Santos*. The jury could have reasonably concluded that the cash and gifts provided to Bohuchot and his family members by Wong, in light of the other evidence that establishes Bohuchot's role in the awarding of contracts, were his "profits" from his role in the bribery scheme. Accordingly, the court determines that the government has established sufficient evidence to support the jury's verdict on count ten.

### D. Obstruction and Impeding an Official Proceeding

On July 1, 2008, Bohuchot also orally made a motion for judgment of acquittal of count thirteen pursuant to Rule 29 of the Federal Rules of Criminal Procedure. He contends that there is insufficient evidence to support his conviction pursuant to this count. The government responds that Cabatingan's testimony alone is sufficient to support this count because he discussed with Bohuchot what he should tell the grand jury. Cabatingan was a reluctant witness, and the court ordered him to testify. At times during the trial, Cabatingan misstated prior testimony or could not recall all of the details of his discussions with Bohuchot. At times Cabatingan had to be prodded regarding his testimony; however, once he "came clean," it was obvious that sufficient evidence beyond a reasonable doubt existed for a rational juror to conclude that the elements of obstructing and impeding an official proceeding pursuant to 18 U.S.C. § 1512(c) had been proved. Accordingly, Bohuchot is not entitled to a judgment of acquittal on this count.

### IV. Conclusion

For the foregoing reasons, the court determines that there is sufficient evidence to support the jury's verdict and therefore **denies** Defendants' Joint Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 and Bohuchot's oral motion for judgment of acquittal regarding the conviction pursuant to 28 U.S.C. § 1512(c).

**It is so ordered** this 10th day of November, 2008.

_____
Sam A. Lindsay
United States District Judge